UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Andrea Peterson )
9700 Commons East Drive, Apt I )
Charlotte, NC 28277 )
312-208-9401 )
)
    Plaintiff )
)
)
Vs. )
)
) Case No: 081326 RWR
)
Archstone (formerly Archstone-Smith Trust) )
2345 Crystal Drive )
Arlington, VA 22202 )
)
Archstone (formerly Archstone-Smith Trust) )
9200 E. Panorama Circle, Ste 400 )
Englewood, CO 80112 )
)
    Defendants )

RECEIVED
AUG 11 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## Amended COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, Andrea Peterson, Pro Se and for her complaint against the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for discrimination in employment brought pursuant to the Age Discrimination in Employment Act (ADEA) of 1967, as codified, 29 U.S.C. §§ 621-634 Plaintiff Peterson allege that Defendant, Archstone discriminated against plaintiff because of her age. U.S.C. § 623(a)(1) states; "It shall be unlawful for an employer— to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;"

2. The ADEA is based on an important policy and fact - that ability, not age, should be

the determining factor in employment decisions

3. This action is also brought pursuant to the District of Columbia Human Rights Act, Subchapter II, Prohibited Acts of Discrimination, Part B Employment § 2-1402.11 Prohibitions (a)(1) General. "It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin. sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual: (1) *By an employer* - To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee;"

4. Plaintiff also seeks relief under Part B, Employment § 2-1402.11 (4)(B) of the Human Rights Act and Part G, other Prohibited Practices § 2-1402.61, Coercion or retaliation

5. Plaintiff will show that (1) plaintiff is over 40 years and is a member of the protected class; (2) that plaintiff applied for and was qualified for numerous positions; (3) that plaintiff was rejected despite her qualifications; and (4) that Archstone ultimately filled an unknown but significant number of positions with candidates sufficiently younger to allow an inference of age discrimination

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1345

7. Venue in the District Court of the District of Columbia is appropriate as this is a

multijurisdictional case. The act of discrimination took place when Plaintiff applied for employment in the District of Columbia, State of Maryland and the State of Virginia

## PARTIES

8. Plaintiff Andrea Peterson is a citizen of the United States of America and is currently a resident of Charlotte, North Carolina. At all relevant times, she has been over the age of 60 year and is within the protected class.

9. Defendant, Archstone, was acquired by Tishman Speyer & Lehman Brothers' in 2007. Prior to this acquisition the company was known as Archstone-Smith Trust. Archstone, a Maryland Real Estate Investment Trust, is one of the largest apartment investment companies in the United States. It owns over 57,000 apartment units in desirable locations including; Washington, DC (40% of its portfolio); Southern California; New York City; and Boston. Defendant principal executive office is located at 9200 E. Panorama Circle, Ste 400, Englewood, CO 80112. A Regional Office is located at 2345 Crystal Drive, Arlington, VA 22202. The Company also offers extended stay properties through Oakwood worldwide.

10. Defendant's web site, Investor Relations tab provides a link to a 10K that states Maryland is the "state or other jurisdiction of incorporation or organization." A search of the records of the Secretary of State for Maryland confirm that Archstone is a Maryland Real Estate Investment Trust and indicates the Registered Agent for service and process is National Registered Agents, Inc. of MD, 2nd floor, 836 Park Ave., Baltimore, MD 21201. No Registered Agent is shown in the District of Columbia for defendant

## FACTUAL INFORMATION

11. In November 2006 Plaintiff sent Archstone a letter, resume and other information supporting her candidacy, and expressed an interest in employment with a

company who plaintiff expressed had values consistent with her own. Plaintiff expressed interest in consideration for Property Management positions to include Community Manager, Assistant Community Manager, Concierge, Leasing Consultant and Operations Manager on either a full or part time basis

12. Plaintiff received a number of emails inviting her to attend a Job Fair at an Archstone managed property located in the District of Columbia

13. At the Job Fair Plaintiff observed the Archstone personnel were all younger individuals as were all of the candidates. Seeing this plaintiff wondered if she would be given serious consideration given her age

14. Plaintiff was interviewed by a Archstone Operations Manager who expressed a favorable opinion in her candidacy and asked that plaintiff meet with a more senior manager

15. Plaintiff was interviewed by the senior manager who expressed that plaintiff has the skills, experience and qualifications for a General Manager position and asked if plaintiff would be interested in the position. He explained that the difference in responsibility between the Property/Community Manger and General Manager positions is the addition to the General Manager responsibilities for a commercial/retail component

16. Plaintiff was subsequently invited into Archstone Regional office and was interviewed by an Operations Manager for a 400+ unit Resident/Community Manager position in Virginia

17. In follow up to the interview, Plaintiff sent a thank you letter and shared/reiterated skills and experience that she believed enhanced her qualifications for the position. Plaintiff was later advised by the HR recruiter that she was not selected for the position

18. Plaintiff maintained ongoing telephone and email contact with a Human Resource Recruiter at defendants headquarters in Colorado during which plaintiff continued to express her interest in both full and part time positions for Leasing Consultant,

Concierge, Community Manager, Assistant Community Manager, General Manager, Customer Service Associate (herein after referred to as the "positions"), all positions at lower levels than the General Manger position that Archstone managers expressed to plaintiff that she has the qualifications to fill

19. Plaintiff regularly checked defendant's web site. Plaintiff observed that defendant had on average 20+ openings monthly for the positions in the MD/DC/VA area posted

20. Defendant continued to recruit for positions that plaintiff was qualified to fill. Plaintiff does not recall a period when defendant had less than one hundred (100) positions posted on the company web site. The numbers of positions open in MD/DC/VA were proportionate to the 40% of defendants apartment portfolio in the MD/DC/VA market.

21. During the period from November 2006 to November 2007 plaintiff estimates that Archstone posted and filled in excess of 200 positions and held numerous job fairs.

22. Plaintiff advised the HR Recruiter that she wanted to be considered for all positions and would accept positions that she had expressed an interest in consideration that were lower in level than the positions she had been interviewed for. Plaintiff also expressed her confidence in the combination of her skills, experience and abilities and that the added value she would provide would cause her to advance in the company

23. When Plaintiff was advised at the regional office interview and in discussion with the Recruiter of the compensation level of the various positions plaintiff responded that the compensation level was acceptable and that she did not expect to be compensated commensurate with roles of greater responsibility that she previously held in her career

24. To further market and highlight her qualifications plaintiff conducted a side by side analysis of her skills and qualifications versus the requirements in defendants job description for a Community Manager position to further demonstrated her skills qualifications and competencies to do the work, and provided this analysis to defendant

25. Plaintiff was licensed as a Real Estate Salesperson and Real Estate Broker and created

a spreadsheet analysis of the training content that resulted in this certification as compared to the content requirements for five (5) of the most significant Property Management Certifications and Designations in order to further demonstrate her skills and qualifications for the positions applied for and sent this to defendant to further highlight her qualifications to do the work

26. In response to plaintiff inquiries for positions, defendant's HR Recruiter would advise plaintiff that she would speak with the Hiring Manager(s). However plaintiff was not asked to interview for any of the positions she expressed an interest in being considered for

27. A day prior to plaintiff filing this action defendant's company web site has posted numerous positions with titles similar to positions that plaintiff had applied and is qualified to fill

28. In late 2006 plaintiff became homeless and lived in homeless shelters from December 2007 to January 2008. Plaintiff continued searching for employment. Believing that it would increase her employment chances plaintiff enrolled and took the training to become licensed in Maryland as a Real Estate Salesperson. There was not a reciprocity agreement between Illinois, where plaintiff had previously through self study took and passed both of the Illinois examinations for Real Estate Salesperson and Real Estate Broker respectively and Maryland

29. Plaintiff continued to reassert to defendant her interest in all positions both full and part time and that she wanted to be considered for even the concierge positions that were posted on the company web site

30. Upon successful completion of the real estate training class, plaintiff studied, prepared and passed the licensing exam and therein completed the requirements for a Maryland Real Estate Salesperson

31. Plaintiff continued to pursue employment with defendant Archstone after filing an EEOC charge in July 2007. In October 2007 Plaintiff sent defendant a letter to advise that she had taken and passed the Maryland Real Estate Sales person exam and was writing to add this information to her skills and qualifications for property management positions. Plaintiff letter included by way of refresher, some highlights of plaintiff qualifications

32. Plaintiff subsequently had a telephone interview/discussion with another defendant HR Recruiter. He informed plaintiff that he would eliminate candidates who's previous salary was greater than the salaries for property management positions he sought to fill. Plaintiff expressed to defendant representative that she viewed this as a career change and did not have an expectation to be paid commensurate with compensation levels of more senior roles and responsibilities in her employment history. Plaintiff also expressed that she had been told what the compensation levels are for positions and that those salaries were acceptable to her.

33. Given plaintiff human resource background and the knowledge that this selection criteria could have a disparate impact, plaintiff sought to show defendant representative how his criteria could result in a loss of otherwise qualified candidates such as individuals who are making career changes and could afford to take a reduction in salary. Plaintiff also pointed out that these individuals would be doing work they enjoy and research indicates that this type individual make excellent and more productive employees. Plaintiff was surprised when defendant representative restated his statement that this is his process.

34. Though plaintiff was surprised plaintiff continued to express her interest in positions that continued to be posted on defendant's company web site

35. After approximately one year in the process with defendant, in October 2007, plaintiff received communication from defendant representative that defendant had decided not to move forward in the process with plaintiff. The communication further stated that

plaintiff should be assured that defendant decision in no way reflects negatively on plaintiff credentials

36. Plaintiff responded to the email and stated that she was surprised by defendant Archstone's, decision not to "move forward in the process with you". She expressed that she appreciated defendant's words that their decision did not in any way reflect negatively on her credentials. However she was confused given the interest and feedback that her qualifications are suitable for a General Manager position expressed at the job fair and, that Archstone had any number of positions for which Archstone was actively seeking candidates. Plaintiff restated her continued interest in positions with Archstone and requested that defendant share the reason defendant had now decided to communicate that they would not consider plaintiff for open positions

37. Defendant did not provide any further clarification

## CLAIMS FOR RELIEF AGAINST DEFENDANT ARCHSTONE
## CLAIM I

38. Pursuant to the Age Discrimination in Employment Act, U.S.C. § 623(a)(1), Defendant, Archstone discriminated against plaintiff when defendant did not hire plaintiff for multiple positions that plaintiff applied for, and was qualified to fill

39. Defendant is in violation of the DC Human Rights Act, Subchapter II, Prohibited Acts of Discrimination, Part B Employment § 2-1402.11 (a)(1) which states; "It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities...."

40. Plaintiff applied for and has the qualifications for multiple positions yet plaintiff continued

to seek applicants from persons with the same or less than plaintiff's qualifications.

41. Plaintiff alleges that defendant filled numerous positions with younger candidates in positions that defendant was qualified to fill

42. Defendant recruiter affirmed plaintiff qualifications in his statement that defendant decision not to proceed did not reflect negatively on plaintiff credentials

## CLAIM II

43. The ADEA U.S.C. § 623(a)(1) states that it is unlawful for an employer to fail or refuse to hire any individual or otherwise discriminate against any individual with respect to his compensation... Defendant stated selection criteria not to consider applicants whose salary history is greater than defendant positions is also discriminatory under the Act

44. The DC Human Rights Act, Subchapter II, Prohibited Acts of Discrimination, Part B Employment § 2-1402.11 (a)(1)also states that it is unlawful for an employer "to fail or refuse to hire, or to discharge any individual: or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions; or privileges of employment..."

45. Defendant selection process further discriminated against plaintiff in defendants stated policy and practice not to consider candidates whose salary history was greater than positions defendant was seeking to fill and as well, has a disparate impact

46. Plaintiff had expressed in many discussions that she understood that the compensation level was lower and that she wanted to be considered, did not have an expectation to be paid at the level of many of the roles in her employment history that were of higher level responsibility, and believed that she would advance from the lower level.

47. Plaintiff viewed the salary from the positions she applied for as a supplement to her social security income that plaintiff received that would have allowed plaintiff to at minimum meet the requirement that no more than 30% of income could be considered

for housing and allow plaintiff to end her homelessness.

48. The additional income would have allowed plaintiff to qualify for housing under the Maryland Moderately Priced Dwelling Unit Program, and similar programs in other neighboring jurisdictions, for which plaintiff had received approval. In addition plaintiff would also have been eligible for discounted housing in one of defendant properties

### CLAIM III

49. The DC Human Rights Act, Subchapter II, Prohibited Acts of Discrimination, Part G, § 2-1402.61(a) states "It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise of enjoyment of any right granted or protected under this chapter"

50. Defendant is in violation of both the DC Human Rights Act and the ADEA; 29 U.S.C. § 623(d) "It shall be unlawful for an employer to discriminate against any of his employees, or applicants for employment,...because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or litigation under this Act."

51. Defendant retaliated against plaintiff when in spite of plaintiff qualifications to fill numerous positions that defendant had open and posted on their web site defendant discontinued plaintiff consideration for any positions in October 2007 when defendant communicated to plaintiff that defendant would not move forward in the process with plaintiff, a violation of both the ADEA and DC Human Rights Act.

In communicating the decision not to proceed, defendant acknowledged plaintiff qualifications and informed plaintiff that defendant decision "in no way reflects negatively

WHEREFORE plaintiff prays this honorable court for the following relief:

Award pursuant to § 16 and 17 of the FLSA, 29 U.S.C. §§ 215, 216, 217, 626 which are the applicable relief provisions under the ADEA and any other applicable provisions to the ADEA or ADEA case history

Award pursuant to Title VII that allows for compensatory damages for emotional pain, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses and other damages e.g. payment of attorney fees...

Award such other and further relief this Court deems just

Respectfully submitted

_____
Andrea Peterson, Pro Se
9700 Commons East Drive
Apartment I
Charlotte, NC
312-208-9401

8/6/08
Date

on your credentials." Plaintiff alleges that this decision, following approximately one year of discussions was in retaliation for plaintiff filing of the EEOC charge against defendant

### CLAIM IV

52. The DC Human Rights Act, Subchapter II, Prohibited Acts of Discrimination, Part B, Employment § 2-1402.11(4)(B) states it shall be an unlawful discriminatory practice by an employer "To print or publish, or cause to be printed or published, any notice or advertisement or use any publication form, relating to employment by such an employer...indicating any preference, limitation, specification, or distinction, based on the race, color, religion, national origin, sex, age..."

53. Further, defendant is in violation of the ADEA; 29 U.S.C. § 623(e) which like the DC Human Rights Act bars an employer of an unlawful acts through the printing or publication of notice or advertisement indicating preference limitation, etc.

54. Plaintiff allege defendant breached this law; 1. When defendant through their representation at defendant job fair published their preference; 2. When defendant advertised and therein indicated preference(s), specifications and distinction based on age

55. Defendant violated the law in its implication that persons older than "US students" need not apply and by its advertisement that "retirees" are encouraged to apply for a specific position therein inferring that "retirees" are not considered for other positions that they may be qualified to fill

56. Plaintiff alleges that it is defendant policy and practices, as demonstrated through a pattern of willful disregard for the Age Discrimination in Employment Act, given the number of instances where there was no regard that it's practices are unlawful and breached the law

WHEREFORE plaintiff prays this honorable court for the following relief:

Award pursuant to § 16 and 17 of the FLSA, 29 U.S.C. §§ 215, 216, 217, 626 which are the applicable relief provisions under the ADEA and any other applicable provisions to the ADEA or ADEA case history

Award pursuant to Title VII that allows for compensatory damages for emotional pain, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses and other damages e.g. payment of attorney fees...

Award such other and further relief this Court deems just

Respectfully submitted

_____
Andrea Peterson, Pro Se
9700 Commons East Drive
Apartment I
Charlotte, NC
312-208-9401

8/6/08
Date