**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ANDREA PETERSON,                       )
                                                    )
                            Plaintiff,         )
                                                    )
                v.                              )        Civil Action No. 08-1326 (RWR)
                                                    )
ARCHSTONE,                                )
                                                    )
                            Defendant.     )
_____)

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary judgment.  For

the reasons discussed below, summary judgment will be granted for defendant.[1]

## I.  BACKGROUND

Archstone Communities LLC ("Archstone") "is an investor, developer and operator of

apartment communities in the United States," and its "portfolio includes numerous properties in

the Washington, D.C. metropolitan area."  Def.'s Mem. of Law in Supp. of its Cross-Mot. for

Summ. J. and Opp'n to Pl.'s Mot. for Summ. J. [ECF No. 119] ("Def.'s Mem."), Decl. of Chris

DeLisa ("DeLisa Decl.") ¶ 2.  Its corporate headquarters are in Englewood, Colorado.  *See id.*,

Decl. of Breanne Taylor ("Taylor Decl.") ¶ 2.  Archstone recruits employees principally

"through its online application system which potential applicants . . . access via Archstone's

website."  DeLisa Decl. ¶ 3.  "At no time during the application process does Archstone request

or solicit information regarding an applicant's age."  *Id.*

---

[1]        "Plaintiff['s] Emergent Motion for Order to Show Cause Preliminary Injunction with
Temporary Restraining Order" [ECF No. 132] will be denied.

At all times relevant to the complaint, the online application system, the Taleo system, allowed applicants to search for and apply for open positions. *Id.* ¶ 4. "In order to apply for a position, applicants were required to complete a general profile" and to upload a resume and a cover letter. *Id.* ¶ 5. "However, to become an active candidate, each applicant was also required to identify and apply for a specific open position." *Id.* At this stage, the applicant completed a pre-screening questionnaire, the answers to which determined whether he or she was minimally qualified for the position. Based on the applicant's answers, if the applicant did not meet the minimal qualifications, the system automatically "generated and sent – to the e-mail address listed by the applicant – a rejection letter." *Id.*

On October 30, 2006, plaintiff "created her general profile on Taleo . . . through Archstone's website." *Id.* ¶ 6. On November 2, 2006, plaintiff uploaded her resume, a cover letter, and a "summary of skills and experience." *Id.* She also applied for two open positions -- Community Manager for Archstone-Smith in the D.C. Metro Area, and Assistant Community Manager for Archstone -- and completed the pre-screening questionnaire for each position. *Id.* ¶ 7; *see id.*, Ex. 2 (pages designated ARCHSTONE 00038-47). The Taleo system deemed plaintiff not minimally qualified for either position and it generated a rejection letter which was sent to plaintiff by e-mail. *Id*. ¶ 7; *see id.*, Ex. 2 (page designated ARCHSTONE 00055). Plaintiff did not apply for any other position using the Taleo system after November 2, 2006. *Id.* ¶ 9. However, because the system retained plaintiff's contact information, "on November 7, 2006, an electronic announcement dealing with the time and location of four job fairs being held in November 2006 in the Washington, D.C. metropolitan area was e-mailed to [her]." *Id.* Archstone hosted these job fairs "to help identify potential candidates for open positions," *id.,*

and one such job fair occurred on November 16, 2006, in Washington, DC.  *Id.* ¶ 10; *see* Taylor Decl. ¶ 5.

Plaintiff attended Archstone's job fair on November 16, 2006, at its Van Ness South property in Northwest, Washington, DC.  *See* Am. Compl. ¶¶ 12-13.  She observed that the Archstone personnel in attendance "were all younger individuals as were all of the candidates." *Id.* ¶ 13.  There she "met with either an Archstone Recruiter, or a Community Manager, as well as an Operations Manager, regarding open Community Manager positions in the Washington, D.C. region."  Def.'s Mem., Decl. of Duane Wooldridge ("Wooldridge Decl.") ¶ 4; Am. Compl. ¶¶ 14-15.  The Operations Manager with whom plaintiff spoke was Jim McDonald, the Operations Manager of an Archstone property in Arlington, Virginia.  *See* Mem. in Supp. of Pl.'s Mot. for Summ. J. [ECF No. 109-1] ("Pl.'s Mem."), Ex. B2.

After "this initial pre-screening meeting, [plaintiff] was referred to [Duane L. Wooldridge] for an interview regarding an open Community Manager position," Wooldridge Decl. ¶ 5, at Archstone Dulles, *id.* ¶ 9, in Herndon, Virginia, *id.* ¶ 5. [2]  Plaintiff was interested in the Community Manager position in part because Archstone employees would "receive a significant discount on apartment rent and that the amount is calculated before taxes thereby yielding a greater discount."  Pl.'s Mem., Ex. L [ECF No. 113-6 ("Peterson Aff.")] ¶ 9. "[H]ousing was plaintiff's greatest expense and salary would be offset by [her] monthly social security annuity."  *Id.*

---

[2]     Mr. Wooldridge began his employment at Archstone in February 2003 as a Community Manager, and subsequently was promoted to Operations Manager with "oversight of approximately 5 to 7 residential rental properties at any given time in the Washington, D.C. metropolitan area," each of which was managed on-site by a Community Manager.  Wooldridge Decl. ¶ 2.  He left Archstone in March 2008.  *Id.*

Mr. Wooldridge describes the Community Manager position as follows:

> Each Archstone residential property employs a Community Manager, which is the highest level position in each property. A Community Manager may supervise eight to fifteen Archstone associates, including maintenance staff, administrative staff, leasing staff, and assistant managers, and may be responsible for 350 to 500 units per site. As such, each Community Manager is responsible for as many as 1,000 customers on a daily basis, and represents the property to countless potential customers. The Community Manager is responsible for maximizing the long-term operating performance of his or her property, which includes personnel management and development, a thorough understanding of the competitive market, and high standards for customer service. Community Managers are responsible for recruiting, retaining, training, and developing a team of sales-focused, service-oriented, business-minded property management professionals who in turn perform day-to-day upkeep on the property. Community Managers are also responsible for developing and using strong marketing and customer service skills at the property in order to drive revenues . . . .

> In order to qualify for a Community Manager position, a candidate must possess three to ten years of professional experience, which should include experience in asset and/or property management and on-site experience. The candidate must also have strong communication skills and must be a teacher, team builder, and team player. Because the Community Manager is the highest position at a property, [she] must possess superb customer service experience and skills in order to drive sales and to develop associates that . . . she supervises.

Wooldridge Decl. ¶¶ 6-7. "Administrative staff, leasing staff, and assistant managers at Archstone residential properties mu[st] also possess superior customer service skills" because each is called upon "to work directly with residents and potential residents." *Id.* ¶ 8.

The interview took place at Archstone's regional headquarters office in Crystal City, Virginia, in December 2006. *Id.* ¶ 9; Am. Compl. ¶ 16. During the interview, Mr. Wooldridge "concluded that [plaintiff] lacked residential property management experience and relevant customer service experience." Wooldridge Decl. ¶ 10. He further recalled:

> I found that that [plaintiff] came across as somewhat odd and would put people off as she had a somewhat condescending manner. Indeed, my interview with [her] felt very strained as [plaintiff] acted as though she was doing me a favor by offering to work at Archstone. In general, I felt that not only did [plaintiff] lack the necessary customer service experience, I felt she would struggle with the customer service aspect of the Company's business, particularly when things got busy or did not go the way that they should, which happens all of the time. Overall, I concluded that Ms. Peterson was not a good fit for a customer-oriented position within the Company and decided not to offer her the Community Manager position.

*Id.* He so informed the recruiting staff at Archstone's Colorado headquarters office. *Id.* ¶ 11.

With respect to plaintiff's age, Mr. Wooldridge averred:

> The decision not to hire [plaintiff] was not based upon her age, nor her salary expectations, but on her qualifications – in particular, my conclusion that she lacked the requisite customer service skills and had no residential property management experience. At no time did I take [plaintiff's] age into consideration in making a decision regarding her application for employment with Archstone.

*Id.* ¶ 14.

"In follow up to the interview, Plaintiff sent a thank you letter and shared/reiterated skills and experience that she believed enhanced her qualifications for the position." Am. Compl. ¶ 17; *see* Pl.'s Mem., Ex. C1 [ECF No. 114] (Letter from plaintiff to Duane Wooldridge dated December 16, 2006).

At Mr. Wooldridge's request, Archstone sent plaintiff a rejection letter which in relevant part stated:

> Thank you for your interest in Archstone-Smith. We were very impressed with your skills and experience level. However, we had other candidates whose skills more closely matched the requirements for this position.

> We will be sure to keep your resume on file for six (6) months, and will contact you if we should have an opening that more closely fits your qualifications.  Likewise, please don't hesitate to apply online for any other open positions you fell match your skills and experience.

Pl.'s Mem., Ex. D [ECF No. 110-6] (Letter to plaintiff from The Recruitment Department at Archstone-Smith).[3]

Mr. Wooldridge interviewed other candidates for the Community Manager position at Achstone Dulles, and ultimately hired a 34-year old woman who "was better qualified" than plaintiff.  *Id.* ¶ 12.  The successful candidate "had prior residential property experience as the Director of Sales and Marketing/Leasing at another Class A luxury high rise property and more than five years of experience in that field."  *Id.*  In addition, she "had demonstrable customer service skills related to resident sales, satisfaction and retention."  *Id.*  She began her employment in February 2007.  *Id.*

Meanwhile, plaintiff "maintained ongoing telephone and email contact with a Human Resource Recruiter at [Archstone's] headquarters in Colorado," and during these contacts she "continued to express her interest in both full and part time positions for Leasing Consultant, Concierge, Community Manager, Assistant Community Manager, General Manager, [and] Customer Service Associate."  Am. Compl. ¶ 18; *see* Peterson Aff. ¶ 11.  "Plaintiff regularly checked [Archstone's] web site," Am. Compl. ¶ 19, and noted that it "continued to recruit for positions that plaintiff was qualified to fill."  *Id.* ¶ 20.

On at least one occasion, plaintiff spoke with Breanne Taylor, who was an HR Recruiter at Archstone's corporate headquarters.  Def.'s Mem., Taylor Decl. ¶¶ 2, 8.  Ms. Taylor did "not

---

[3]     Plaintiff avers that "Archstone sent [her] an undated letter," and the envelope in which it came was "postmarked December 27, 2006."  Pl.'s Mem., Material Facts [ECF No. 109-2] ¶ 5.

recall the specifics of [their] conversation," but had plaintiff "expressed any interest in a specific position at Archstone," she would have directed plaintiff "to apply for the position through the Company's website, as [she] did to all potential external applicants." *Id.* ¶ 8. Ms. Taylor "[a]t no time . . . recall[ed] asking [plaintiff] about her age," nor did she "have any knowledge as to how old [plaintiff] was." *Id.* ¶ 9.

Plaintiff sent a letter to Ms. Taylor on October 13, 2007, Pl.'s Mem., Ex. H [ECF No. 113-2], and the letter in turn was forwarded to Troy Negley, who then was the Lead Regional Recruiter at Archstone's headquarters office. *See* Def.'s Mem., Decl. of Troy Negley ("Negley Decl.") ¶¶ 2-3. Mr. Negley called plaintiff on October 23, 2007 regarding the letter, at which time she informed him of her interest in any open position and of her prior interview with Mr. Wooldridge. Negley Decl. ¶ 4. In Mr. Negley's experience, "a potential applicant who states that . . . she wishes to be considered for any position raises a red flag, because it suggests that the candidate either has not done the research to learn about the Company's business and jobs available or have not evaluated the positions [for which she feels she is] best qualified." *Id.* ¶ 5. Mr. Negley contacted Mr. Wooldridge on October 24, 2007 for "his recommendation on how to proceed" with plaintiff's inquiry. *Id.* ¶ 6. Mr. Wooldridge "remembered [plaintiff] as being odd" and believed that "she would not like the customer service aspect of the Company's apartment-based positions." *Id.* "Overall, Mr. Wooldridge did not believe that [plaintiff] would be a good fit for employment with Archstone." *Id.* Based on these comments, Mr. Negley informed plaintiff on October 30, 2007, "that Archstone was not interested in pursuing employment opportunities with her." *Id.* ¶ 7; Pl.'s Mem., Ex. K [ECF No. 113-5] (emails to plaintiff from Troy Negley dated October 30, 2007 and October 31, 2007); *see* Am. Compl. ¶ 35. "At no time did [Mr. Negley] ever ask [plaintiff] about her age [nor did he] have any knowledge

as to how old she was." Negley Decl. ¶ 8.  Nor did Mr. Negley "take [plaintiff's] age into consideration in making a decision regarding her interest in employment with Archstone." *Id.*

Although plaintiff did not apply for any other position using the Taleo system after November 2, 2006, DeLisa Decl. ¶ 9, plaintiff considered herself "an active employment candidate with Archstone" from November 2, 2006 through October 30, 2007.  Pl.'s Mem. at 11. Plaintiff alleges that, on or about August 1, 2007, she filed an age discrimination complaint against Archstone with the Equal Employment Opportunity Commission ("EEOC").  Peterson Aff.  ¶ 12; *see* Am. Compl. ¶ 31.  It appears that plaintiff completed an intake questionnaire, not a formal charge of discrimination, at that time.  *See* Peterson Aff. ¶ 13; Pl.'s Reply Mem. to Def. Opp'n to Pl. Mot. for Summ J. and Pl. Opp'n Mem. to Def. Cross Mot. for Summ. J [ECF No. 127] ("Pl.'s Reply"), Ex. L [ECF No. 127-16] (Letter to plaintiff from Carolyn M. Allen, Program Assistant, EEOC, dated August 1, 2007).  It further appears that the charge was not perfected and signed by plaintiff until February 18, 2008.  *See* Archstone Mot., Decl. of S. Libby Henninger, Ex. 6 (Amended Charge of Discrimination, EEOC No. 570-2007-01959 and Case Log) [ECF No. 119-5].[4]  The alleged discriminatory actions occurred between November 2006 and October 30, 2007.  *Id.* (Amended Charge of Discrimination) at 1.  Nevertheless, the EEOC sent Archstone a Notice of Charge of Discrimination on or about January 29, 2008.  *See* Mem. of P. & A. in Supp. of Def. Archstone Communities, LLC's Mot. to Dismiss or, in the Alternative, for Summ. J. [ECF No. 7], Ex. 2 (Notice of Charge of Discrimination dated January 29, 2008).

---

[4]        It appears that the charge of discrimination signed on February 18, 2008, amended a charge of discrimination signed on January 16, 2008.  *See* Def.'s Mem., Ex. 6 (Amended Charge of Discrimination dated February 18, 2008 and Charge of Discrimination dated January 16, 2008).

Plaintiff, who is over 60 years of age, Am. Compl. ¶ 8, alleges that Archstone did not hire her because of her age in violation of the Age Discrimination in Employment Act, *see* 29 U.S.C. §§ 621 *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), *see* D.C. Code §§ 2-1401.01 *et seq.*  She demands "compensatory damages for emotional pain, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses and other damages e.g. payment of attorney fees."  Am. Compl. at 13.

The Clerk of Court received plaintiff's original complaint and application to proceed without prepayment of fees on July 21, 2008.  The application was approved on July 30, 2008, and the complaint and application were officially docketed on July 31, 2008.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are material, a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The mere existence of a factual dispute does not bar summary judgment.  *See id.*  A genuine dispute is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available."  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted); *Anderson*, 477 U.S. at 248.  The Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477

U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of her position.  *Id.* at 252.  She must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and she cannot rely on conclusory assertions without any factual basis in the record to create a genuine dispute.  *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

There are certain material facts about which there is no genuine issue in dispute: (1) at all relevant times, plaintiff was over 60 years of age; (2) Archstone's decisions not to hire plaintiff are adverse employment actions; and (3) these adverse employment actions occurred no earlier than November 6, 2006, and no later than October 30, 2007.

### B.  Plaintiff's Claims Under the DCHRA Arising Before July 21, 2007 Are Time-Barred

Archstone moves for summary judgment on the ground that, under both the ADEA and the DCHRA, plaintiff's complaint is time-barred.  *See generally* Def.'s Mem. at 14-15.  With respect to the ADEA, Archstone notes that, because the District of Columbia is a "deferral jurisdiction," an age discrimination charge to the EEOC is timely only if it is filed within 300 days of the alleged discriminatory act.  *See, e.g., Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 158 (D.D.C. 2004).  According to Archstone, "[a]lthough Plaintiff apparently completed an EEOC intake questionnaire on August 1, 2007, her Charge of Discrimination was not signed – and, accordingly, was not filed – until February [18], 2008."[5]  Def.'s Mem. at 14.  It asserts that "[a]n intake question is not equivalent to a complaint of discrimination, and therefore, completing such a document does not toll the statute of limitations."  *Id.*  As a result,

---

[5]      The Court presumes that there is a typographical error in Archstone's memorandum, and finds that plaintiff signed the Charge of Discrimination on February 18, 2008, not on February 28, 2008, as the memorandum represents.

the argument proceeds, "any claim based on allegedly discriminatory acts that occurred more than 300-days from February [18], 2008 – or on or about May 4, 2007 – is time-barred." *Id.* Following this rationale, plaintiff cannot pursue a claim of age discrimination with respect to the November 6, 2006 Taleo-generated decision not to consider her for the Community Manager or Assistant Community Manager position, or Mr. Wooldridge's December 27, 2006 decision not to hire plaintiff for a Community Manager position, or for Archstone's decision not to hire plaintiff "for any position . . . filled prior to May 4, 2007." *Id.* at 15.

There are circumstances under which an intake questionnaire may comprise a charge of discrimination. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("In addition to the information required by the regulations, *i.e.,* an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."); *Johnson-Parks v. D.C. Chartered Health Plan,* 713 F. Supp. 2d 39, 45-46 (D.D.C. 2010) (evaluating whether an intake questionnaire constituted a charge under the *Holowecki* standard); *see also* 29 C.F.R. § 1601.12(b) (requiring a charge to contain at least "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of").   If, as plaintiff represents, she submitted an intake questionnaire on or about August 1, 2007, and if her questionnaire provides enough detail that it qualifies as a charge of discrimination, she may pursue an age discrimination claim arising as early as October 5, 2006 – 300 days prior to the intake questionnaire dated August 1, 2007. However, neither party has submitted a copy of the intake questionnaire, and the Court therefore has no way to make this determination.

With respect to plaintiff's DCHRA claim, the statute of limitations period is one year and it begins to run "from the occurrence or the discovery of the discriminatory act." *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 105 (D.D.C. 2009).  Archstone argues that "any alleged injuries suffered by Plaintiff that occurred prior to July 21, 2007," one year prior to the filing of this civil action on July 21, 2008, "cannot form the basis of a claim brought under the DCHRA."  Archstone Mem. at 15.  Although plaintiff addresses Archstone's timeliness argument with respect to the ADEA claim, *see generally* Pl.'s Reply at 30-33, she does not mention the one-year statute of limitations under the DCHRA.

The last date on which a claim under the DCHRA could have accrued was October 30, 2007, the date of Mr. Negley's email.  Plaintiff filed her complaint in this Court on June 21, 2008, such that any claim arising from Mr. Negley's decision is timely filed.  However, the one-year limitations period for any claim arising from the November 6, 2006 Taleo-generated letter expired on November 6, 2007, and for any claim arising from Mr. Wooldridge's decision expired on or about December 27, 2007, meaning that these claims under the DCHRA are time-barred.

### C.  Plaintiff Fails to Rebut Archstone's Legitimate, Non-Discriminatory Reason for its Hiring Decision

In a case such as this, where plaintiff presents no direct evidence of age discrimination, her claim under the ADEA is "analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), as simplified by *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)."  *Hicks v. Gotbaum*, 828 F. Supp. 2d 152, 160 (D.D.C. 2011).  Accordingly, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not -- *and should not* -- decide whether the plaintiff actually

12

made out a prima facie case under *McDonnell Douglas*." *Brady*, 520 F.3d at 494 (emphasis in

original).  Instead, the Court addresses only one question:

> Has [plaintiff] produced sufficient evidence for a reasonable jury
> to find that the employer's asserted non-discriminatory reason was
> not the actual reason and that the employer intentionally
> discriminated against the employee on the basis of [her age]?

*Brady*, 520 F.3d at 493-94 (citations omitted); *Baloch v. Kempthorne,* 550 F.3d 1191, 1196 (D.C.

Cir. 2008) (applying *Brady* to ADEA claims); *Blocker-Burnette v. District of Columbia*, 842 F.

Supp. 2d 329, 334 (D.D.C. 2012) (same).  The same analysis applies to plaintiff's claim under

the DCHRA.  *See Primas v. District of Columbia*, 878 F. Supp. 2d 1, 7 (D.D.C. 2012) ("Age

discrimination claims under the ADEA and DCHRA are analyzed in the same way sex and

gender discrimination claims are analyzed under the federal anti-discrimination laws.");

*Washington Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1073 n.7 (D.C. 2008) ("This

court has looked to federal court decisions interpreting the [ADEA] when evaluating age

discrimination claims under the DCHRA.").  At all times, plaintiff "retains the burden of

persuasion to establish that age was the 'but-for' cause of the employer's adverse action."  *Gross*

*v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177 (2009).

Plaintiff alleges "that age was the sole determent [sic] factor in Archstone's decision not

to hire [her] and that defendant has no evidence, no records and no memory to refuse the facts"

that she "applied for multiple positions," was qualified for these positions, and that she "was not

selected because of her age."  Pl.'s Mem. at 1 (page numbers designated by ECF).  Archstone

represents that it did not hire plaintiff for "a legitimate, non-discriminatory reason . . . namely

that she failed to convince her interviewer that she had the relevant customer service skills and

did not have residential property management experience."  Def.'s Mem. at 18.  Archstone's

burden is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). It need only articulate a legitimate nondiscriminatory reason for its hiring decision and offer admissible evidence in support of that reason. *See id.* Archstone has done so in this case. Plaintiff's ability to defeat Archstone's motion for summary judgment depends on her ability to point to evidence in the record to show that Archstone's stated reason for not selecting her for any position is pretextual. "In the summary judgment context, this means the plaintiff must establish a genuine issue of material fact through the introduction of admissible evidence whether the employer's stated reasons are false and whether a discriminatory reason motivated the employer to take the action it took." *Sibilla v. Follett Corp.*, No. 10-1457, 2012 WL 1077655, at *15 (E.D.N.Y. Mar. 30, 2012) (citation omitted).

Plaintiff states that "Archstone's strategy to win this case was to destroy records and build a fictional account as a pretext for not hiring a qualified candidate but for her age." Pl.'s Mem. at 5. Plaintiff asserts that Archstone intentionally destroyed records pertaining to her applications, *id.* at 6, notwithstanding its own record retention policies, *id.*, in order that Archstone would be unable to produce in discovery records regarding not only plaintiff's November 16, 2006 interview with Mr. McDonald at the job fair but also her subsequent communications with Archstone representatives. *See id.* She harks back to the parties' discovery disputes, *see id.* at 8, and now claims to be "unable to obtain vital evidence necessary . . . to present her case" because of Archstone's inadequate responses to her interrogatories and other discovery requests. *Id.* at 8; *see generally id.* at 22-28. For example, plaintiff argues that Mr. McDonald deemed her qualified for a Community Manager position, and because Archstone "did not submit any affidavit or certified paper to refute [his] statement," Pl.'s Reply at 25, Archstone concedes all of her Requests for Admission propounded on February 2, 2012, *see* Pl.'s

Mem., Ex. O, including its purported "admissions" that it hired younger applicants to fill the positions for which plaintiff applied, and that its hiring decisions were based solely on plaintiff's age.  *See generally id.*, Ex. O (Def.'s Resp. and Objections to Pl.'s Req. for Admis. Nos.  27-169).  She further contends that, because of Archstone's alleged violations of court orders and rules of civil procedure, plaintiff posits that "[n]o sanction short of summary judgment will allow [her] to recover her loss."  Pl.'s Mem. at 9.

There are two glaring deficiencies with plaintiff's argument.  First, plaintiff offers only speculation, and fails to point to any material in the record of this case to support her assertions of Archstone's supposed misdeeds or Mr. McDonald's determination that plaintiff was qualified for a Community Manager position.  Second, plaintiff's discovery disputes are not properly entertained at this stage of the proceedings.  The Court afforded the parties two different means by which to address their discovery disputes -- referral to Magistrate Judge Kay on October 6, 2009 and referral to the Circuit Executive for mediation on October 20, 2011 -- yet the plaintiff did not take full advantage of either opportunity.  The plaintiff failed to appear for the hearing she sought before Magistrate Judge Kay, *see* Order to Show Cause, November 23, 2009 [ECF No. 81] at 2, and she abandoned mediation, *see* Joint Response to Order for Mediation Status Report [ECF No. 107].  To the extent that plaintiff relies on Archstone's responses -- or lack of responses -- to discovery requests propounded in February 2012, her reliance is misplaced.  The last scheduling order in effect [ECF No. 38] set September 28, 2009, as the discovery deadline; the deadline was extended once, to October 30, 2009 [ECF No. 55].  There was no scheduling

order in effect in February 2012, and Archstone violated no court order in declining to respond to plaintiff's requests for admissions.[6]  Archstone conceded nothing.

Plaintiff next argues that she is qualified for all of the positions for which she applied.[7] Plaintiff asserts that she has training and skills greater than those expected of Archstone's "highest property management designation."  *Id.* at 13.  Plaintiff also purports to have "demonstrated skills and experience in Community Government/Leadership" as a "Vice President of Real Estate and Development of the Greater South Loop Association, . . . and condo associations [in] Chicago, that included work with Developers . . . ," *id.*, as well as community leadership and property management experience, *id.* at 14.  These statements are based only on plaintiff's own assessment of her skills and experience, however, and are not supported by any evidence or other material in the record of this case.  Plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications . . . fail to disprove [the employer's] explanation or show discrimination."  *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 15 (1st Cir. 1998) (finding that plaintiff's "personal opinion regarding his own job qualifications is not sufficiently

---

[6]     After the remand of this case, the parties were ordered on August 29, 2011 to submit a joint proposed schedule for further proceedings, and the report was to include proposed dates for discovery and dispositive motions.  Subsequently, at the parties' request, on October 20, 2011 the parties were referred to the Circuit Executive for mediation, and counsel was appointed to represent plaintiff for the limited purpose of mediation.  The objectives of mediation were to include not only the parties' discovery disputes but also settlement of the entire case.  All litigation proceedings were stayed during the mediation period.  Plaintiff propounded requests for admissions long after the last discovery deadline had passed, and during a time period when all proceedings had been stayed.  Mediation was stillborn.

[7]     Plaintiff claims that at the November 16, 2006 job fair, Mr. McDonald "interviewed[] and informed plaintiff that she is qualified for an Archstone General Manager position."  Pl.'s Mem. at 11.  This comment at an initial pre-screening meeting does not rebut Archstone's neutral explanation that the ultimate job interviewer found her off-putting, and lacking in the requisite customer service skills and in residential property management experience.

probative on the issue of pretext"); *McKnight v. Ridgecrest Health Group, LLC*, No. 11CV00032, 2013 WL 173005, at *5 (W.D. Va. Jan. 16, 2013) (finding that plaintiff failed to create genuine issue of material fact as to reason for her termination based on her "own assessment of her performance [and] the assessment of her coworker").  In other words, plaintiff's "self-serving assertions as to [her] qualifications and the qualifications of others will not defeat a motion for summary judgment."  *St. Louis v. Am. Family Mut. Ins. Co.*, 300 F. Supp. 2d 813, 827 (W.D. Wis. 2003), *aff'd*, 121 F. App'x 660 (7th Cir. 2005).

Furthermore, plaintiff expressed her interest in any open position at Archstone for roughly a one-year period, without demonstrating that she is qualified for the myriad positions for which she purportedly considered herself an active candidate.  For example, plaintiff asked "to be considered for . . . Resident Concierge, Assistant Community Manager and Community Manager," Pl.'s Mem. at 16, or any of "the over 100 positions that Archstone advertised," *id.* at 17, yet in her motion she points to no materials in the record to identify these positions and or to demonstrate her qualifications for any of these positions.  Nor does plaintiff dispute the Taleo determination that she did not meet the minimum qualifications for the Community Manager and Assistant Community Manager positions for which she applied on November 2, 2006.

Lastly, plaintiff attributes to Archstone an unlawful motive for its decision not to hire her: discrimination because of her age.  Yet in the face of declarations by Archstone representatives denying knowledge of plaintiff's age, plaintiff baldly asserts, for example, that the company's "preference is to hire younger individuals whose last salary is less than positions Archstone is recruiting to fill," Pl.'s Mem. at 19, as evidenced by "the age range of representatives at Archstone Job Fair" and its posted "position descriptions communicat[ing] Archstone age

preference." *Id.*  None of these arguments and characterizations, even if considered together, tend to disprove Archstone's explanation for its hiring decisions.  Plaintiff points to no evidence in the record to rebut Archstone's explanation by showing that age discrimination was the actual reason for its decision.  Instead, plaintiff relies on her own unsupported assertions, opinions, observations, and assessment of her experience and qualifications.

Plaintiff sincerely may believe that Archstone did not hire her because of her age.  Her belief coupled "with unsupported speculation or allegations of discrimination," *Schumpert v. Mancor Carolina, Inc.*, No. 300248022, 2004 WL 3583987, at *5 (D.S.C. Mar. 20, 2004), however, cannot defeat Archstone's adequately supported cross-motion for summary judgment. In light of plaintiff's failure to show through the introduction of admissible evidence a genuine issue of material fact that Archstone's stated reasons are false and that a discriminatory reason motivated its actions, there is not sufficient evidence from which a reasonable jury could find that Archstone's stated reasons for its hiring decisions were pretext for age discrimination. "Short of finding that the employer's stated reason was indeed a pretext, however -- and here one must beware of using 20/20 hindsight -- the court must respect the employer's unfettered discretion to choose among qualified candidates."  *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  Accordingly, plaintiff's motion will be denied, and Archstone's cross-motion for summary judgment will be granted.

III.  CONCLUSION

Archstone has articulated a legitimate nondiscriminatory reason for its decision not to hire plaintiff, and plaintiff has not rebutted Archstone's showing.  Accordingly, the Court will grant summary judgment for Archstone.  An Order accompanies this Memorandum Opinion.


Signed this 27th day of February, 2013.

/s/
RICHARD W. ROBERTS
United States District Judge